

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JUDGE DER-YEGHIAYAN

MAGISTRATE JUDGE
GERALDINE SOAT BROWN

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 11 CR 354 |
| vs. | Violations: Title 18, United States Code, Section 1343 and 1344 |
| SAMER NATOUR and WALID HALIT | |

FILED
MAY 17 2011
5-17-11
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## COUNT ONE

The SPECIAL FEBRUARY 2011-1 GRAND JURY charges:

1. At times material to this indictment:

   a. Washington Mutual Bank FA ("WAMU") was a financial institution, the deposits of which were insured by the Federal Deposit Insurance Corporation.

   b. WAMU and Equity Mortgage Corporation, Inc. ("Equity Mortgage"), as well as their agents, successors, assigns, nominees, servicers and trustees ("lenders"), were in the business of issuing mortgage loans to borrowers across the United States, including the Northern District of Illinois.

   c. Lenders required applicants for mortgage loans to provide truthful information, including truthful information about an applicant's income, assets, the source of any down payment, and liabilities, which information was material to the decision to approve and fund mortgage loans.

   d. Lenders sold the mortgage loans to other lenders and institutions (Successors). Lenders disclosed that the mortgage loans could be sold and the likelihood that

the mortgage loans would be sold. The information provided in loan applications and supporting documents, including the borrower's employment, financial condition, assets, liabilities, payment history, and the sale price, was material to the Successors' decisions to purchase the mortgage loans.

2. Beginning no later than in or about June 2007 and continuing until in or about March 2008, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

SAMER NATOUR and<br>WALID HALIT,

defendants herein, together with others known and unknown to the Grand Jury, devised and intended to devise, and participated in a scheme to defraud and obtain money and property from lenders, by means of materially false and fraudulent pretenses, representations, and promises, which scheme is further described below.

3. It was part of the scheme that in July 2007, defendants SAMER NATOUR and WALIT HALIT fraudulently obtained a $640,000 mortgage loan in defendant SAMER NATOUR's name from WAMU, which loan was secured by real property located at 1 East Schiller Street, Unit 3A, Chicago, Illinois ("Unit 3A").

4. It was further part of the scheme that in March 2008, defendants SAMER NATOUR and WALIT HALIT attempted to fraudulently obtain a $417,000 mortgage loan in defendant SAMER NATOUR's name from Equity Mortgage, which loan was to be secured by real property located at 1 East Schiller Street, Unit 3B, Chicago, Illinois ("Unit 3B").

5. It was further part of the scheme that defendants SAMER NATOUR and WALID HALIT caused materially false information to be placed in mortgage loan applications for defendant SAMER NATOUR that were submitted to WAMU and Equity Mortgage, including false information regarding defendant SAMER NATOUR's income, assets, and the existence and source of down payments and earnest money, so that defendant SAMER NATOUR would falsely appear to be qualified for a mortgage loan.

6. It was further part of the scheme that defendants SAMER NATOUR and WALID HALIT created and caused to be created materially false documentation to support the fraudulent loan applications, including false verifications of deposit and false copies of earnest money checks, well-knowing that the statements in these documents were false and were material to the lenders' decisions to approve the loans.

### 1 East Schiller Street, Unit 3A, Chicago, Illinois

7. It was further part of the scheme that, on or about June 27, 2007 and July 23, 2007, defendants SAMER NATOUR and WALID HALIT knowingly prepared and submitted, and caused to be prepared and submitted, loan applications in defendant SAMER NATOUR's name to WAMU, in order to fraudulently obtain a mortgage loan in the amount of $640,000 to finance the purchase of Unit 3A, which loan applications contained materially false and fraudulent information about defendant SAMER NATOUR's assets, including that defendant SAMER NATOUR had $137,000 on deposit at Charter One Bank, when, as defendants knew, defendant SAMER NATOUR did not have an account at Charter One

Bank.

8. It was further part of the scheme that defendant WALID HALIT knowingly caused defendant SAMER NATOUR's loan applications for purchase of Unit 3A to contain false information, including false information that defendant NATOUR had a bank account at Charter One Bank.

9. It was further part of the scheme that, on or about July 23, 2007, as a result of the fraudulent loan applications, defendants SAMER NATOUR and WALID HALIT caused WAMU to fund a mortgage loan in the amount of $640,000 to finance defendant SAMER NATOUR's purchase of Unit 3A.

10. It was further part of the scheme that defendants SAMER NATOUR and WALID HALIT arranged for a loan from Individual A to cover the approximately $32,000 down payment that defendant SAMER NATOUR needed to complete the purchase of Unit 3A, without disclosing to WAMU that defendant SAMER NATOUR had borrowed this amount. In addition, defendant SAMER NATOUR falsely represented in his loan application for purchase of Unit 3A that the down payment came from his checking or savings. Following the closing, defendant WALID HALIT caused Individual A to be repaid from proceeds of the sale.

11. It was further part of the scheme that defendant WALID HALIT received from the seller of Unit 3A at least $75,000 in proceeds from the sale, at least $15,000 of which defendant WALID HALIT provided to defendant SAMER NATOUR without disclosing

such payments to WAMU. Defendant SAMER NATOUR used these funds to make some mortgage payments on Unit 3A.

### 1 East Schiller Street, Unit 3B, Chicago, Illinois

12. It was further part of the scheme that, on or about December 12, 2007 and March 13, 2008, defendants SAMER NATOUR and WALID HALIT knowingly prepared and submitted, and caused to be prepared and submitted, false and fraudulent loan applications in defendant SAMER NATOUR's name to Equity Mortgage, in order to fraudulently obtain a mortgage loan in the amount of $417,000 to finance the purchase of Unit 3B, which loan applications contained materially false and fraudulent information about defendant SAMER NATOUR, including that defendant SAMER NATOUR had base monthly employment income of $10,000, net monthly rental income of $1,050, and had $285,000 on deposit at Charter One Bank, when, as defendants knew, defendant SAMER NATOUR's monthly employment income was approximately $8,200, he did not have net rental income, and he did not have $285,000 on deposit at Charter One Bank.

13. It was further part of the scheme that defendants SAMER NATOUR and WALID HALIT created and caused to be created a false and fraudulent verification of deposit form that was submitted to Equity Mortgage in order to support the false information provided in defendant SAMER NATOUR's loan applications. This false and fraudulent verification of deposit form stated that defendant SAMER NATOUR had approximately $284,906 on deposit at Charter One Bank, when as defendants SAMER NATOUR and

WALID HALIT knew, defendant NATOUR did not have a bank account at Charter One Bank.

14. It was further part of the scheme that defendants SAMER NATOUR and WALID HALIT created and caused to be created a copy of an earnest money check reflecting that defendant paid $60,000 in earnest money to the seller of Unit 3B, when as defendants SAMER NATOUR and WALID HALIT knew, the copy of the earnest money check was false and defendant SAMER NATOUR did not pay earnest money to the seller of Unit 3B.

15. It was further part of the scheme that defendants SAMER NATOUR and WALID HALIT did misrepresent, conceal, and hide, and caused to be misrepresented, concealed, and hidden the true purpose of the acts done in furtherance of the scheme.

16. On or about March 13, 2008, at Chicago, in the Northern District of Illinois, Eastern Division,

SAMER NATOUR and
WALID HALIT,

defendants herein, for the purpose of executing the aforesaid scheme to defraud, and attempting to do so, did knowingly cause to be transmitted by means of wire communication in interstate commerce, certain writings, signs, and signals, namely, a wire transfer of approximately $417,000 from an Equity Mortgage account at Horizon Bank in Michigan City, Indiana to a Chicago Title and Trust account in Chicago, Illinois, which funds were to be used to pay the seller of Unit 3B;

In violation of Title 18, United States Code, Section 1343.

## COUNT TWO

The SPECIAL FEBRUARY 2011-1 GRAND JURY further charges:

1. The allegations in paragraph 1 of Count One of this indictment are hereby realleged and incorporated by reference as if fully stated herein.

2. Beginning no later than in or about June 2007 and continuing until in or about March 2008, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

SAMER NATOUR and
WALID HALIT,

defendants herein, together with others known and unknown to the Grand Jury, devised, intended to devise, and participated in a scheme to defraud a financial institution and to obtain money and property owned by and under the custody and control of a financial institution, which scheme is further described below.

3. The allegations contained in paragraphs 3 through 15 of Count One are hereby realleged and incorporated herein by reference.

4. On or about July 23, 2007, at Chicago, in the Northern District of Illinois, Eastern Division,

SAMER NATOUR and
WALIT HALIT,

defendants herein, knowingly executed and attempted to execute the above-described scheme by causing WAMU, a financial institution whose deposits were insured by the FDIC, to fund a loan in the amount of $640,000 to defendant SAMER NATOUR for the purchase of Unit

3A;

In violation of Title 18, United States Code, Section 1344.

A TRUE BILL:

_____
FOREPERSON

_____
UNITED STATES ATTORNEY