FILED

OCT 0 2 2013

Judge Samuel Der-Yeghiayan
U.S. District Court

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA          )
                                  )      No. 11 CR 354-1
        vs.                       )      Judge Samuel Der-Yeghiayan
                                  )
SAMER NATOUR                      )

## PLEA AGREEMENT

1.       This Plea Agreement between the United States Attorney for the Northern District of Illinois, GARY S. SHAPIRO, and defendant SAMER NATOUR, and his attorney, JOSEPH LOPEZ, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure and is governed in part by Rule 11(c)(1)(A), as more fully set forth below. The parties to this Agreement have agreed upon the following:

### Charges in This Case

2.       The indictment in this case charges defendant with wire fraud, in violation of Title 18, United States Code, Section 1343 (Count One) and bank fraud, in violation of Title 18, United States Code, Section 1344 (Count Two).

3.       Defendant has read the charges against him contained in the indictment, and those charges have been fully explained to him by his attorney.

4.       Defendant fully understands the nature and elements of the crimes with which he has been charged.

## Charge to Which Defendant Is Pleading Guilty

5.    By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the following count of the indictment: Count Two, which charges defendant with bank fraud, in violation of Title 18, United States Code, Section 1344.

## Factual Basis

6.    Defendant will plead guilty because he is in fact guilty of the charge contained in Count Two of the indictment.   In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt and constitute relevant conduct pursuant to Guideline § 1B1.3:

Beginning not later than in or about January 2007 and continuing until in or about March 2008, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere, defendant SAMER NATOUR, along with co-defendant Walid Halit, and others, devised, intended to devise, and participated in a scheme to defraud Washington Mutual Bank, a financial institution insured by the Federal Deposit Insurance Corporation, and to obtain money and property owned by and under the custody and control of Washington Mutual Bank, and defendant executed the scheme by closing on a mortgage loan in the amount of $640,000 funded by Washington Mutual Bank for defendant's purchase of a property located at 1 East Schiller Street, Unit 3A, Chicago, Illinois.

More specifically, in 2007 co-defendant Walid Halit approached defendant to see if he was interested in purchasing two properties.   The properties were located at 1 East

Schiller Street, Units 3A and 3B, in Chicago, Illinois. Halit asked defendant if defendant would put the properties in defendant's name using defendant's credit. Halit told defendant he would rehab the properties, sell them, and then share the profits with defendant. Halit also agreed to make the mortgage payments on the properties while they were in defendant's name.

After meeting with Halit, defendant agreed to purchase the properties. Defendant purchased Unit 3A on July 23, 2007, obtaining a $640,000 mortgage loan from Washington Mutual Bank. Defendant applied for a $417,000 mortgage loan from Equity Mortgage Corporation to purchase Unit 3B. That transaction was scheduled to close on March 13, 2008. However, on that date, law enforcement agents stopped the closing before the purchase was completed.

Individual A served as defendant's loan officer for his purchase of Unit 3A and his attempted purchase of Unit 3B. In his capacity as defendant's loan officer, Individual A prepared and submitted to lenders documents that were necessary to qualify defendant for mortgage loans. These documents included, among others, loan applications containing information about defendant's qualifications for mortgage loans. The loan applications for defendant's purchase of Unit 3A and Unit 3B contained false information, including false information about defendant's income, the source of his down payment, and defendant's intention to live in Unit 3A. This information about a potential borrower's income, source of down payment, and intention to occupy a property was material to lenders in deciding to make a mortgage loan to a borrower.

3

Defendant did not provide Individual A with the false information contained in defendant's loan applications. However, as noted below, defendant knew that the loan applications contained the false information.

With respect to defendant's purchase of Unit 3A, defendant reviewed and signed a loan application for this transaction both before and at the closing. Defendant knew that each of the loan applications he signed contained false information. For example, defendant knew that the loan applications falsely stated that defendant made $10,504 in gross monthly income, including $504 in net rental income and $3,500 from a second job. In fact, defendant's gross monthly employment income was approximately $8,200 per month, much less than what was contained in the loan application. Defendant also knew that the loan applications falsely stated that defendant intended to live in Unit 3A, when defendant knew that was not true. Finally, defendant also knew that the loan applications falsely stated that the source of his down payment was his checking/savings, when defendant knew he was not providing any of his own funds for the down payment.

For his attempted purchase of Unit 3B, the only loan application defendant signed was at the closing for this transaction. At that time, defendant reviewed the loan application and saw that it contained false information about his income and about the source of his down payment. Specifically, defendant knew that the loan application stated that he made $11,050 in gross monthly income, when in fact, as noted above, that was false. Defendant also knew that the loan application stated that the source of defendant's down payment was his checking/savings. In fact, defendant knew that Halit

brought the down payment money for this closing. More specifically, defendant knew that Halit brought a $150,000 cashier's check to the closing that was made payable to the title company with defendant listed as the remitter. Defendant did not know the source of those funds, but knew that none of his own funds were used to purchase the cashier's check.

As charged in Count Two of the indictment, on or about ~~March 13, 2008~~, *(handwritten: July 23, 2007)* defendant executed the scheme to defraud Washington Mutual Bank, which was insured by the Federal Deposit Insurance Corporation at the time, by obtaining a mortgage loan from Washington Mutual Bank in the amount of approximately $640,000.

7.     The foregoing facts are set forth solely to assist the Court in determining whether a factual basis exists for defendant's plea of guilty, and are not intended to be a complete or comprehensive statement of all the facts within defendant's personal knowledge regarding the charged crimes and related conduct.

## Maximum Statutory Penalties

8.     Defendant understands that the charge to which he is pleading guilty carries the following statutory penalties:

a.     A maximum sentence of 30 years' imprisonment. Pursuant to Title 18, United States Code, Section 3561, defendant may not be sentenced to a term of probation for this offense. This offense also carries a maximum fine of $1,000,000, or twice the gross gain or gross loss resulting from that offense, whichever is greater.

Defendant further understands that the judge also may impose a term of supervised release of not more than five years.

b.      Defendant further understands that the Court must order restitution to the victims of the offense in an amount determined by the Court.

c.      In accord with Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which he has pled guilty, in addition to any other penalty or restitution imposed.

### Sentencing Guidelines Calculations

9.      Defendant understands that in imposing sentence the Court will be guided by the United States Sentencing Guidelines. Defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in determining a reasonable sentence.

10.      For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

a.      **Applicable Guidelines**. The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2012 Guidelines Manual.

b.      **Offense Level Calculations.**

i.      The base offense level is 7, pursuant to Guideline § 2B1.1(a)(1).

6

       ii.     Pursuant to Guideline § 2B1.1(b)(1)(G), defendant's offense level is increased by 12 levels because the estimated loss amount is $218,380, which exceeds $200,000 but is less than $400,000. Defendant acknowledges that the loss amount and, therefore, the offense level and Guidelines range may increase if additional losses are realized from fraudulent transactions in which defendant participated.

       iii.    Pursuant to Guideline § 2B1.1(b)(10)(C), defendant's offense level is increased by 2 levels because the offense involved sophisticated means.

       iv.    Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine or restitution that may be imposed in this case, a two-level reduction in the offense level is appropriate.

       v.    In accord with Guideline § 3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a

two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

c.    **Criminal History Category**. With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government, defendant's criminal history points equal zero and defendant's criminal history category is I.

d.    **Anticipated Advisory Sentencing Guidelines Range**. Therefore, based on the facts now known to the government, the anticipated offense level is 18, which, when combined with the anticipated criminal history category of I, results in an anticipated advisory Sentencing Guidelines range of 27 to 33 months' imprisonment, in addition to any supervised release, fine, and restitution the Court may impose.

e.    Defendant and his attorney and the government acknowledge that the above Guideline calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional Guideline provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final Guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above

calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

f.     Both parties expressly acknowledge that this Agreement is not governed by Fed.R.Crim.P. 11(c)(1)(B), and that errors in applying or interpreting any of the Sentencing Guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the Guidelines. The validity of this Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Agreement, on the basis of such corrections.

## Cooperation

11.    Defendant agrees he will fully and truthfully cooperate in any matter in which he is called upon to cooperate by a representative of the United States Attorney's Office for the Northern District of Illinois. This cooperation shall include providing complete and truthful information in any investigation and pre-trial preparation and complete and truthful testimony in any criminal, civil, or administrative proceeding. Defendant agrees to the postponement of his sentencing until after the conclusion of his cooperation.

## Agreements Relating to Sentencing

12.    At the time of sentencing, the government shall make known to the sentencing judge the extent of defendant's cooperation. If the government determines that

9

defendant has continued to provide full and truthful cooperation as required by this Agreement, then the government shall move the Court, pursuant to Guideline § 5K1.1, to depart downward from the low end of the applicable Guideline range, and shall recommend a sentence that includes a term of imprisonment in the custody of the Bureau of Prisons of 66 percent of the low end of the applicable Guideline range. Defendant shall be free to recommend any sentence. Defendant understands that the decision to depart from the applicable guidelines range rests solely with the Court.

13.     If the government does not move the Court, pursuant to Sentencing Guideline § 5K1.1, to depart from the applicable Guideline range, as set forth above, the preceding paragraph of this Agreement will be inoperative, both parties shall be free to recommend any sentence, and the Court shall impose a sentence taking into consideration the factors set forth in 18 U.S.C. § 3553(a) as well as the Sentencing Guidelines without any downward departure for cooperation pursuant to § 5K1.1. Defendant may not withdraw his plea of guilty because the government has failed to make a motion pursuant to Sentencing Guideline § 5K1.1.

14.     It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

15.     Regarding restitution, defendant acknowledges that pursuant to Title 18, United States Code, § 3663A, the Court must order defendant, together with any jointly liable co-defendants, to make full restitution to the victim in an amount to be determined by the Court at sentencing, which amount shall reflect credit for any funds repaid prior to sentencing.

16.     Restitution shall be due immediately, and paid pursuant to a schedule to be set by the Court at sentencing. Defendant acknowledges that pursuant to Title 18, United States Code, Section 3664(k), he is required to notify the Court and the United States Attorney's Office of any material change in economic circumstances that might affect his ability to pay restitution.

17.     Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

18.     After sentence has been imposed on the count to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining count of the indictment as to defendant.

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

19.     This Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 11 CR 354-1.

20.     This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

## Waiver of Rights

21.     Defendant understands that by pleading guilty he surrenders certain rights, including the following:

a.     **Trial rights**. Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

i.     The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

ii.     If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where

actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

iii.     If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt and that it was to consider each count of the indictment separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

iv.     If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

v.     At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

vi.     At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

vii.    At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

b.    **Waiver of appellate and collateral rights**. Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial. Defendant is aware that Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742, afford a defendant the right to appeal his conviction and the sentence imposed. Acknowledging this, if the government makes a motion at sentencing for a downward departure pursuant to Sentencing Guideline § 5K1.1, defendant knowingly waives the right to appeal his conviction, any pre-trial rulings by the Court, and any part of the sentence (or the manner in which that sentence was determined), including any term of imprisonment and fine within the maximums provided by law, and including any order of restitution, in exchange for the concessions made by the United States in this Agreement. In addition, if the government makes a motion at sentencing for a downward departure pursuant to Sentencing Guideline § 5K1.1, defendant also waives his right to challenge his conviction and sentence, and the manner in which the sentence was determined, and (in any case in which the term of imprisonment and fine are within the maximums provided by statute) his attorney's alleged failure or refusal to file a notice of appeal, in any collateral attack or future challenge, including but not limited to a motion brought under Title 28, United States Code, Section 2255. The waiver in this paragraph

14

does not apply to a claim of involuntariness, or ineffective assistance of counsel, which relates directly to this agreement or to its negotiation, nor does it prohibit defendant from seeking a reduction of sentence based directly on a change in the law that is applicable to defendant and that, prior to the filing of defendant's request for relief, has been expressly made retroactive by an Act of Congress, the Supreme Court, or the United States Sentencing Commission.

      c.     Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

### Presentence Investigation Report/Post-Sentence Supervision

22.     Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charges against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing, including the nature and extent of defendant's cooperation.

23.     Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete

information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of his sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

24.     For the purpose of monitoring defendant's compliance with his obligations to pay a fine and restitution during any term of supervised release to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

## Other Terms

25.     Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine and restitution for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

26.     Defendant understands that pursuant to Title 12, United States Code, Sections 1785(d) and 1829, his conviction in this case will prohibit him from directly or

indirectly participating in the affairs of any financial institution insured by the National

Credit Union Share Insurance Fund or the Federal Deposit Insurance Corporation, except

with the prior written consent of the National Credit Union Administration Board or the

FDIC and, during the ten years following his conviction, the additional approval of this

Court. Defendant further understands that if he knowingly violates this prohibition, he

may be punished by imprisonment for up to five years, and a fine of up to $1,000,000 for

each day the prohibition is violated.

## Conclusion

27.     Defendant understands that this Agreement will be filed with the Court, will

become a matter of public record, and may be disclosed to any person.

28.     Defendant understands that his compliance with each part of this Agreement

extends throughout the period of his sentence, and failure to abide by any term of the

Agreement is a violation of the Agreement. Defendant further understands that in the event

he violates this Agreement, the government, at its option, may move to vacate the

Agreement, rendering it null and void, and thereafter prosecute defendant not subject to

any of the limits set forth in this Agreement, or may move to resentence defendant or

require defendant's specific performance of this Agreement. Defendant understands and

agrees that in the event that the Court permits defendant to withdraw from this Agreement,

or defendant breaches any of its terms and the government elects to void the Agreement

and prosecute defendant, any prosecutions that are not time-barred by the applicable statute

of limitations on the date of the signing of this Agreement may be commenced against

defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

29.     Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound to it.

30.     Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

31.     Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.


AGREED THIS DATE: _October 2, 2013_


_Gary S. Shapiro/uss_
GARY S. SHAPIRO
United States Attorney


_Samer Natour_
SAMER NATOUR
Defendant


_Jason A. Yonan_
JASON A. YONAN
Assistant U.S. Attorney


_Lisa M. Lopez for JL_
JOSEPH LOPEZ
Attorney for Defendant


18